# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VANESSA BINES,<br>              Plaintiff,<br><br>      v.<br><br>SHERRIFF JEWELL WILLIAMS,<br>STAFF INSPECTOR SHERRIFF PARIS<br>WASHINGTON, and<br>CITY OF PHILADELPHIA,<br>              Defendants. | CIVIL ACTION<br><br><br><br>NO. 17-4527 |

DuBois, J.                                                                                                                                                                                                                                     August 24, 2018

## **M E M O R A N D U M**

## I.    INTRODUCTION

      In this suit under Title VII, 42 U.S.C. § 2000e, the Pennsylvania Human Relations Act, 43 Penn. Cons. Stat. §§ 951–63, the Philadelphia Fair Practices Ordinance, 9 Phila. Code § 1101 *et seq.*, the Pennsylvania Whistleblower Act, 42 Penn. Cons. Stat. § 1421 *et seq.*, and 42 U.S.C. §§ 1983 and 1985, plaintiff Vanessa Bines alleges that sexual harassment by defendants Sheriff Jewell Williams and Staff Inspector Paris Washington violated her statutory and constitutional rights. Currently pending before the Court are Williams and Washington's Motions to Dismiss, joined in by defendant City of Philadelphia. The Motions are granted in part and denied in part. Washington's Motion is granted with respect to plaintiff's retaliation claim under the Pennsylvania Whistleblower Act; both Motions are granted with respect to plaintiff's demand for punitive damages under the Pennsylvania Human Relations Act. The Motions are denied in all other respects.

## II. BACKGROUND

The facts below are drawn from plaintiff's First Amended Complaint ("Amended Complaint") and the documents on which it is based. The Court construes the Amended Complaint in the light most favorable to the plaintiff, as it must in a motion to dismiss. Those facts may be summarized as follows:

Plaintiff began work in the City of Philadelphia's Sheriff's Department "[i]n or around 2012" as an Administrative Assistant. Am. Compl. ¶ 11. Approximately six months later, she became a contract Clerical Assistant, and sometime in 2013, she became a full-time exempt employee of defendant City of Philadelphia ("City"). *Id.*

In 2014, defendant Staff Inspector Paris Washington ("Washington") began making comments about plaintiff in the presence of their coworkers. *Id.* ¶ 13. In particular, Washington told plaintiff he "want[ed] to know what [she] had between [her] legs" and once answered plaintiff's cellphone (which she had lost) by stating that plaintiff "was with him on her knees." *Id.* ¶ 13.

Plaintiff reported Washington's conduct to defendant Sheriff Jewell Williams. Am. Compl. ¶ 13. Williams, however, also made "sexually harassing comments" to and about plaintiff. *Id.* ¶ 14. In June 2014, Williams said to plaintiff, "[Y]ou know what they say about guys with big feet." *Id.* Plaintiff alleges that Williams was referring to the size of his genitalia. *Id.* Williams also stated to plaintiff's coworkers that he "wondered if [plaintiff] had those spots down there," referring to plaintiff's vitiligo, a disease that causes patches of skin to lose pigment. *Id.* ¶ 15. Williams also showed a "romantic interest" in plaintiff by "hang[ing] around" plaintiff's desk, inviting plaintiff to "expensive dinners," and taking her to the District Attorney's Holiday Party in December 2014. *Id.* ¶

When Williams and Washington learned that plaintiff was romantically involved with a Deputy Sheriff in April 2015, their "harassment of [p]laintiff increased significantly." Am. Compl. ¶ 18. Williams told Washington to "fuck with" plaintiff. *Id.* "Going forward," Washington began monitoring plaintiff on camera and scrutinizing her time sheet. *Id.* ¶ 19. Williams "smeared" plaintiff by calling her a "home wrecker" and a "whore" to coworkers. *Id.* ¶ 20. "Plaintiff attempted to overlook Sherriff Williams's and Inspector Washington's harassment because she feared losing her job" until she reported Washington to the City's Equal Employment Opportunity Office ("EEO") in May 2016. *Id.* ¶ 20-21. When the "EEO findings came back" in October 2016, plaintiff was asked to train another individual to perform plaintiff's duties. *Id.* ¶ 21. The Amended Complaint does not disclose the EEO "findings."

In December 2016 plaintiff was "diagnosed with depression and insomnia, as a result of the harassment she endured while working in the Sheriff's Department." Am. Compl. ¶ 22. Plaintiff subsequently took medical leave through January 2017 Plaintiff "so that she could have some time to manage her depression and insomnia." *Id.* In February 2017, a friend of Washington, a Philadelphia police captain, "contacted Plaintiff's landlord in an attempt to have her evicted from her home and terminated from the Sheriff's Department." *Id.* ¶ 23. The Amended Complaint does not state the content of the police captain's communications.

In the "spring of 2017," plaintiff filed charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). Am. Compl. ¶ 24. Sometime that spring, plaintiff also reported Washington to the Board of Ethics and the City Controller for collecting separate payments for providing notary services even though it was included in his job duties. *Id.* ¶ 25. Washington was subsequently found to be in violation of the City's Code of

Ethics.[1]  *Id.*  On or around June 7, 2017, plaintiff applied to become a "permanent administrator" for the City.  *Id.* ¶ 44-45.  Plaintiff's application was denied on the ground that she "was not qualified for the position," although she had "already been in the position performing the job duties required for the position for the past five years."  *Id.* ¶ 45

Plaintiff filed her original Complaint in this Court on October 6, 2017.  Following the filing of that Complaint, Williams told other employees of the Sheriff's Department, *inter alia*, that plaintiff "will go if [he] goes regardless of her EEOC complaint," that plaintiff is the "devil" and a "liar" and that her complaints would cost them their jobs.  *Id.* ¶¶ 29-32.  On April 7, 2018, plaintiff received a Right to Sue Letter from the EEOC[2] and filed a First Amended Complaint on April 8, 2018, setting forth thirteen counts against Williams, Washington, and the City:

1. Retaliation under the Pennsylvania Whistleblower Act, 42 Penn. Cons. Stat. § 1421, against all defendants;
2. Civil conspiracy "to unlawfully interfere with [p]laintiff's prospective and existing contracts," against Williams and Washington;
3. Conspiracy to "interfere with [p]laintiff's civil rights" under 42 U.S.C. § 1985, against Washington and Williams;
4. Sexual harassment under the Pennsylvania Human Relations Act ("PHRA"), 43 Penn. Cons. Stat. §§ 951-963, against the City, and against Williams and Washington for aiding and abetting the harassment;
5. Sexually hostile work environment under the PHRA against the City, and against Williams and Washington for aiding and abetting the harassment;
6. Retaliation under the PHRA for denying plaintiff permanent employment as a result of her complaints to the EEO, EEOC, Ethics Department, and City Controller against the City, and against Williams and Washington for aiding and abetting the retaliation;

---

[1] The Amended Complaint does not expressly state the ground for the alleged violation.
[2] Plaintiff does not allege that she received a Right to Sue Letter from the EEOC, but does attach one to her separate Opposition to Washington and Williams's Motions to Dismiss.  *See* Doc. No. 22, ex. D; Doc. No. 23, ex. D.  The Court may consider "undisputedly authentic documents if the complainant's claims are based upon these documents" in deciding a motion to dismiss.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Because plaintiff is required to allege exhaustion, *Wardlaw v. City of Phila.*, No. 09-3981, 2011 U.S. Dist. LEXIS 29655, at *8 (E.D. Pa. Mar. 21, 2011), the Court concludes the First Amended Complaint relies on the Right to Sue Letter and it may consider it, along with the EEOC charges attached to each of Opposition, in deciding defendants' Motions.

7. Sexual harassment under the Philadelphia Fair Practices Ordinance ("PFPO"), 9 Phila. Code § 1101, against the City, and against Williams and Washington for aiding and abetting the harassment;
8. Sexually hostile work environment under the PFPO against the City, and against Williams and Washington for aiding and abetting the harassment;
9. Retaliation under the PFPO for denying plaintiff permanent employment as a result of her complaints to the EEO, EEOC, Ethics Department, and City Controller against the City, and against Williams and Washington for aiding and abetting the retaliation;
10. Sexual harassment under Title VII, 42 U.S.C. § 2000e against the City;
11. Retaliation under Title VII against the City;
12. Hostile work environment under Title VII against the City; and,
13. Failure to train under 42 U.S.C. § 1983 against the City.

On March 12, 2018, Williams and Washington filed separate Motions to Dismiss plaintiff's Amended Complaint, seeking to dismiss Counts 1-9 of the Amended Complaint. On March 13, 2018, the City filed a Joinder in the Motions of Co-Defendants Williams and Washington, stating it joined those Motions "to the extent that they preclude liability against the City." Defendants' Motions are ripe for decision.

### III. LEGAL STANDARD

"The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 674 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. In assessing the plausibility of plaintiff's claims, a district court first identifies those allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 557 (2007). Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff's complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it

states a plausible claim for relief. *Id.* In assessing the "nub" of the complaint, the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

IV. **ANALYSIS**

Defendants Williams and Washington set forth a number of arguments that plaintiff fails to state a claim under the Pennsylvania Whistleblower Act, the PHRA and PFPO, Pennsylvania civil conspiracy law, and 42 U.S.C. § 1985. The Court considers each statute and defendants' relevant arguments in turn.

   A. **Pennsylvania Whistleblower Act**

Count 1 of plaintiff's Amended Complaint alleges that defendants violated the Pennsylvania Whistleblower Act by denying her a permanent position with the City in retaliation for her reports to the EEO, EEOC, Ethics Department, and City Controller. Under the Whistleblower Act, it is "unlawful for an employer to subject an employee to adverse employment action because the employee 'makes a good faith report . . . verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.'" *Albright v. City of Phila.*, 399 F. Supp. 2d 575, 595 (E.D. Pa. 2005) (quoting 43 Penn. Cons. Stat. § 1423(a)). A "good faith report" is a report of waste or wrongdoing "which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." *Id.* (quoting 43 Penn. Cons. Stat. § 1422). Since 2014, the Whistleblower Act has defined an "employer" as a "public body or any of the following which receives money from a public body to perform work or provide services," including any "individual." 43 Penn. Cons. Stat. § 1422 (2016).

Williams argues that the Court should dismiss Count One of the Amended Complaint because plaintiff has failed to allege (1) a "good faith" report of wrongdoing in that her reports of sexual harassment were for her personal benefit, (2) a causal connect between that report and an adverse action, and (3) knowledge by defendants of her report. Doc. No. 18-1 at 2; Doc. No. 20-2 at 11.

Plaintiff's allegations are sufficient to survive Williams's Motions to Dismiss with respect to these arguments. Plaintiff alleges that, in addition to reporting sexual harassment, she reported Washington to the Board of Ethics and the City Controller for charging for notary services. These reports were plausibly not for plaintiff's personal benefit.

Further, the Amended Complaint avers that plaintiff was subsequently denied a permanent position despite her qualifications for the position. The existence of a causal link between protected activity and an adverse employment action "must be considered with a careful eye to the specific facts and circumstances encountered" and evidence of a causal link may be "gleaned from the record as a whole." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). The time between plaintiff's reports to the Board of Ethics and the City Controller and the denial of her application for a permanent position—at least two months—is too long, without more, to support an inference of causation. *E.g.*, *Conklin v. Warrington Twp.*, No. 06-cv-2245, 2009 U.S. Dist. LEXIS 36256, at *13 (M.D. Pa. Apr. 30, 2009) ("[T]emporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence."). Plaintiff also alleges, however, that Williams had a long course of conduct of harassing her, and after the Complaint was filed in this Court, expressly threatened to terminate her. These allegations are sufficient at this stage to support a plausible inference that the denial of her application for a permanent position was caused by her reports to the Board of

7

Ethics and the City Controller. *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997) ("[W]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' . . . can also give rise to [an] inference" of causation).

Washington raises two arguments with respect to plaintiff's whistleblower claim. First, Washington argues that he is not an "employer" under the Act. The Court rejects this argument. Washington relies on a version of the Act no longer in effect, which defined an "employer," in part, as a "person supervising one or more employees, including the employee in question." 43 Penn. Cons. Stat. § 1422 (2013). As noted above, the Pennsylvania legislature amended the Act in 2014 to alter the definition of "employer" to include any "individual" who "receives money from a public body to perform work or provide services." 2014 Pa. Laws 87, § 2. The 2014 definition is applicable to Washington. The Court thus rejects Washington's argument with respect to this issue.

Washington next argues that plaintiff has failed to plead any facts that "casually connects" her denial of a permanent position to retaliation by Washington. The Court agrees with Washington with respect to this issue. In contrast with Williams, the Amended Complaint alleges *no* conduct by Washington after reporting him to the Board of the Ethics and the City Controller in the "later part of spring 2017." In contrast, the allegations of Williams's statements and conduct support an inference that her denial of a permanent position was caused by those reports; the Amended Complaint contains no parallel allegations regarding Washington. Therefore, Washington's Motion to Dismiss is granted with respect to Count 1 of the Amended Complaint.

### B. PHRA and PFPO

The Amended Complaint sets forth claims pursuant to the PHRA and PFPO for sexual harassment, a hostile work environment, and retaliation. The PHRA and PFPO are interpreted consistently, *Richards v. Foulke Assocs.*, 151 F. Supp. 2d 610, 614 n.5 (E.D. Pa. 2001), and are both "substantially similar" to Title VII, *Nagle v. RMA*, 513 F. Supp. 2d 383, 387 (E.D. Pa. 2007); *Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("The proper analysis under Title VII and the [PHRA] is identical as Pennsylvania courts have construed the two acts interchangeably"). Unlike Title VII, however, liability under the PHRA and PFPO is not limited to "employers," but may extend to individuals who "aid [or] abet" any "unlawful discriminatory practice." *Heneghan v. Northampton Cmty. Coll.*, 801 F. Supp. 2d 347, 359 n.6 (E.D. Pa. 2011) (citing 43 Penn. Cons. Stat. § 955(e)). Williams and Washington raise a number of arguments with respect to plaintiff's claims under the PHRA and the PFPO. The Court considers each of their arguments in turn.

*1. Exclusive One-Year Jurisdiction of the Pennsylvania Human Relations Commission*

First, Williams and Washington both argue that plaintiff's claims under the PHRA and PFPO must be dismissed because she filed this suit before expiration of the Pennsylvania Human Relations Commission's one-year exclusive jurisdiction over claims under the PHRA. Doc No. 18-1 at 10 n.9; Doc. No. 20-2 at 17. The PHRA requires plaintiffs to file an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC"), before filing suit in court. The PHRC retains "exclusive jurisdiction" over the claim for one year, *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 919 (Pa. 1989), after which plaintiff may (but need not) file suit in court, *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 471 (3d Cir.

2001). In turn, a complaint with the PHRC satisfies the exhaustion requirements of the PFPO. *Richards v. Foulke Assocs.*, 151 F. Supp. 2d 610, 616 (E.D. Pa. 2001).

The Court rejects defendants' argument with respect to this issue. "Courts in this Circuit have adopted a flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the one-year deadline expires during court proceedings. 'Rather than dismiss[ing] [a] plaintiff's claim on a curable, technical defect,' these courts 'allow [the PHRC] claim to be decided on the merits.'" *Wardlaw*, No. 09-3981, 2011 U.S. Dist. LEXIS 29655, at *13 (citing *Violanti v. Emery Worldwide*, 847 F. Supp. 1251, 1258 (M.D. Pa. 1994)). Moreover, although plaintiff filed her Complaint before the expiration of the one-year exclusive jurisdiction of the PHRC, that period has since passed. The Court thus rejects defendants' arguments with respect to this issue.

### 2. *Exhaustion of Administrative Remedies*

Williams and Washington next contend that plaintiff has failed to exhaust her administrative remedies because they are not "named" in the charges filed with the EEOC. Doc. No. 18-1 at 6, 9; Doc. No. 20-2 at 17 n.7. The Court rejects those arguments. "Ordinarily, an action under Title VII and/or the PHRA may only be brought against a party previously named in a charge filed with the appropriate administrative agency." *Catagnus v. Aramark Corp.*, 235 F. Supp. 2d 413, 416 (E.D. Pa. 2002). "[I]ndividuals do not have to be named in the caption of the case and . . . just mentioning the individuals in the body of the Complaint gives the individuals the requisite notice so that judicial relief may be sought." *Hills v. Borough of Colwyn*, 978 F. Supp. 2d 469, 478 (E.D. Pa. 2013). "The purpose of requiring an aggrieved party to resort first to the EEOC is twofold: to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.

1977). Williams and Washington were both identified by their titles in plaintiff's charge filed with the EEOC on May 8, 2017, and were expressly named in the EEOC charge filed on July 10, 2017. Doc. No. 18, exs. A-B. In those charges, plaintiff detailed much of Washington's alleged conduct and stated that she reported that conduct to Williams, but her claims were "brushed off." Doc. No. 18, ex. B. at 3. Although plaintiff's charges do not specify that Williams himself harassed plaintiff, the charges are sufficient to give defendants notice and provide an avenue for conciliation.

Williams also argues that plaintiff failed to exhaust her claims for retaliation and hostile work environment because the relevant conduct occurred after she filed EEOC charges and consequently, was not included in those charges. Doc. No. 18-1 at 9. The Court rejects this argument. When "discriminatory actions continue after the filing of an EEOC complaint . . . the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints." *Catagnus*, 235 F. Supp. 2d at 217 (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)). The "parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976). In this case, plaintiff's claims for a sexually hostile work environment and retaliation can be reasonably expected to arise from plaintiff's charge, which detailed Washington's conduct and Williams's indifference. *Accord Wardlaw*, No. 09-3981, 2011 U.S. Dist. LEXIS 29655, at *11 (concluding that retaliation claims were within the scope of PHRC charge for discrimination); *Daigle v. West*, 225 F. Supp. 2d 236, 242 (N.D.N.Y. 2002).

### 3. Time Between Washington's Conduct and Filing of EEOC Charge

Washington raises two arguments related to the time between plaintiff's filing of her first charge with the EEOC and his alleged misconduct. First, he argues that plaintiff's sexual harassment and hostile work environment claims are barred by the 180-day filing period under the PHRA. Doc. No. 20-2 at 16 (citing 43 Pa. Cons. Stat. §§ 959(a), 962). Washington's argument is misplaced. The EEOC and PHRC have a work-sharing agreement, and by requesting "cross-fil[ing]" of a charge filed with the EEOC, "plaintiff is excused from filing directly with the PHRC, and the EEOC assumes responsibility for transmitting the complaint to the PHRC." *Wardlaw v. City of Phila.*, No. 09-3981, 2011 U.S. Dist. LEXIS 29655, at *8 (E.D. Pa. Mar. 21, 2011). Although a "claimant must file a PHRC complaint within 180 days of the challenged conduct," *Clarkson v. SEPTA*, 700 F. App'x 111, 114 (3d Cir. 2017), "a claimant's filing of a charge of discrimination with the EEOC, which is then transmitted to the PHRC, satisfies all the pleading requirements of PHRA." *Seybert v. Int'l Grp., Inc.*, No. 07-3333, 2009 U.S. Dist. LEXIS 21543, at *43-44 (E.D. Pa. Mar. 17, 2009) (citing *Lukus v. Westinghouse Elec. Corp.*, 419 A.2d 431, 452 (Pa. Super. 1980)).

Plaintiff has pled sufficient facts to meet those requirements. Plaintiff filed her first charge with the EEOC on May 8, 2017, in which she requested cross-filing with the PHRC. Doc. No. 22 ex. A. The latest conduct by Washington alleged in the Amended Complaint occurred in "February of 2017," when Washington's friend, a Philadelphia police captain, attempted to have her evicted from her home. Am. Comp. ¶ 23. Although Washington argues that "nothing . . . in the Amended Complaints suggests that Defendant Washington . . . prompted his alleged unnamed 'friend'" to act, plaintiff's allegations support a reasonable inference that Washington did exactly that. Plaintiff adequately alleges in the Amended Complaint that at least

12

one act by Washington that aided or abetted the sexual harassment of plaintiff or the hostile work environment at the Sheriff's office was within the statutory period. *See National Railroad Passenger Corp. (Amtrak) v. Morgan*, 536 U.S. 101, 113 (2002).

Washington also argues with respect to plaintiff's retaliation claim that she has failed to adequately allege any retaliatory conduct by Washington that was causally connected to her activities protected by the PHRA. The Court rejects this argument. Plaintiff reported Washington's sexual harassment to the EEO in May 2016. The EEO findings based on that report were received in October 2016. Am. Compl. ¶ 21. Plaintiff adequately alleges that she was subject to "increased" harassment by Washington during this period, culminating in the attempt by Washington's "friend" to have her evicted in February 2017. These allegations are sufficient to support an inference that plaintiff's protected conduct caused Washington to aid and abet the retaliation against plaintiff for her report to the EEO.

Williams raises a similar argument that plaintiff's "retaliation claim similarly fails to the extent that it is based on allegedly 'protected conduct' that occurred in 2014, 2015 and 2016." Doc. Not. 18-1 at 9. The Court rejects this argument. As described above with respect to Count 1, Williams's conduct and statements support a reasonable inference that he aided and abetted retaliation against plaintiff, not for protected activity in 2016 or before, but for her report to the EEOC in 2017.

    4. *Individual Liability Under the PHRA*

Washington next argues that plaintiff has pled insufficient facts to support individual liability under the PHRA because he is not a "supervisory employee." The Court rejects this argument. Unlike Title VII, individual liability may be imposed under the PHRA on "any person, employer, employment agency, labor organization or employe" who aids or abets any

"unlawful discriminatory practice." 43 Penn. Cons. Stat. § 955(e). The PHRA states that "person" includes, "but is not limited to, any owner, lessor, assignor, builder, manager, broker, salesman, agent, [or] employe." 43 Penn. Cons. Stat. § 954(a). This definition encompasses Washington.

Further, the cases cited by Washington are inapplicable to this issue. Although those cases describe individual liability under the PHRA as applying to "supervisory employees," those cases did not decide whether non-supervisory employees may be liable under the PHRA. *Petrunich v. Sun Bldg. Sys.*, No. 3:CV-04-2234, 2006 U.S. Dist. LEXIS 69043, at *22 (M.D. Pa. Sep. 26, 2006); *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998); *Cohen v. Temple Physicians, Inc.*, 11 F. Supp. 2d 733, 737 (E.D. Pa. 1998). In light of the broad language of the PHRA, the Court declines to limit liability under the statute to supervisory employees.

### 5. *Individual Liability Under the PHRA*

Finally, both defendants argue that punitive damages are not permitted under the PHRA, and plaintiff's demand for punitive damages in Counts 4, 5, and 6 of the Amended Complaint should be struck. Plaintiff concedes this point. Doc. No 23 at 2. Consequently, plaintiff's demand for punitive damages in Counts 4, 5, and 6 of the PHRA is stricken by agreement of the parties.

### C. Plaintiff's Conspiracy Claims

Finally, both defendants argue that plaintiff's civil conspiracy claims and claims under 42 U.S.C § 1985 fail because plaintiff has failed to allege an underlying tort. The Court rejects this argument. "A predicate to any civil conspiracy claim is the presence of an underlying tort." *Festa v. Jordan*, 803 F. Supp. 2d 319, 326 (M.D. Pa. 2011). Plaintiff has adequately alleged

underlying tortious conduct by defendants in violation of the PHRA and the equal protection clause. Further, she has alleged sufficiently particular facts regarding the conspiracy between Williams, Washington, and potentially others, including William's instruction to Washington to "fuck with" plaintiff and the conduct of Washington's "friend." These allegations are sufficient to survive a motion to dismiss.

Further, Washington argues that "Supreme Court of the United States unanimously has held that Section 1985(3) may not be invoked to redress violations of Title VII and similar civil rights statutes." Doc. No. 20-2 at 14 (citing *Great American Federal Sav. & Loan Ass 'n v. Novotny*, 442 U.S. 366 (1979)). Washington's argument is misplaced. Although under *Novotny*, Title VII claims may not be enforced *through* § 1985 or the other civil rights statutes, "discrimination claims may be brought under either statute, or both." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990). The Third Circuit has expressly ruled that claims for gender-based animus are cognizable under § 1985. *Bedford v. Se. Pa. Transp. Auth.*, 867 F. Supp. 288, 294 (E.D. Pa. 1994) ("The court is satisfied that gender-based animus is encompassed by § 1985(3)."). The Court thus rejects Washington's argument with respect to this issue.

## V.     CONCLUSION

For the foregoing reasons, Defendant Jewell Williams Motion to Dismiss Plaintiff's Amended Complaint is denied and the Motion of Defendant Paris Washington to Dismiss the Amended Complaint of Plaintiff Vanessa Bines are granted in part and denied in part. Both Motions are granted to the extend they seek to strike plaintiff's demand for punitive damages in Count 4, 5, and 6 of the Amended Complaint by agreement of the parties. Washington's Motion is granted with respect to Count 1 of the Amended Complaint, in which plaintiff sets forth a

claim for retaliation under the Pennsylvania Whistleblower Act.  The Motions are denied in all other respects.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  The Court may dismiss a claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).  The Court concludes that an amendment of Count 1 might not be futile, so that Count may be amended, if warranted by the facts and applicable law as stated in this Memorandum, within twenty (20) days.  An appropriate order follows.